```
               IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ADRIENNE STOKES, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 05-00437 (JBS) |
| v. | |
| ACCOUNTS RECEIVABLE MANAGEMENT, INC., | **OPINION** |
| Defendant. | |

APPEARANCES:

Samuel A. Dion, Esq.
DION & GOLDBERGER, ESQS.
1616 Walnut Street
Suite 2316
Philadelphia, PA 19103
    Attorney for Plaintiff

Alexander Nemiroff, Esq.
Peter Frattarelli, Esq.
ARCHER & GREINER, PC
One Centennial Square
Haddonfield, NJ 08033-0968
    Attorney for Defendant

**SIMANDLE**, District Judge:

    This matter comes before the Court on Defendant Accounts Receivable Management, Inc.'s motion for summary judgment [Docket Item 15]. The Court heard oral argument on this motion on October 24, 2006. For the reasons explained in this Opinion, the Court will grant the motion in part and deny it in part.

**I.   BACKGROUND**

    This employment discrimination case arises out of Plaintiff

Adrienne Stokes' employment with Defendant, Accounts Receivable Management, Inc. ("ARM"). Plaintiff alleges that Defendant unlawfully terminated her employment on June 17, 2004, because she is African-American and because she made a good faith complaint of racial discrimination in March 2004. (Am. Compl. ¶¶ 8, 11, 14, 16.) In Count One of the Amended Complaint, Plaintiff alleges that Defendant discriminated against her in violation of 42 U.S.C. § 1981. In Count Two, Plaintiff alleges that Defendant discriminated against her in violation of the New Jersey Law Against Discrimination ("the LAD"), N.J. Stat. Ann. § 10:5-13. (Because § 10:5-13 merely specifies the processes for seeking relief, Plaintiff likely intended to allege discrimination in employment in violation of N.J. Stat. Ann. §§ 10:5-12a, which prohibits discrimination in employment, and N.J. Stat. Ann. § 10:5-12d, which prohibits firing someone in retaliation for a complaint of discrimination.)[1]

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367. Plaintiff brought this action directly in the U.S. District Court for the Eastern District of Pennsylvania, which transferred the case to the District of New Jersey on Defendant's motion pursuant to 28 U.S.C. § 1404(a). Although the issue is not raised by either party, the Court notes that it has

---

[1] At oral argument, counsel for Plaintiff clarified that Plaintiff is not advancing any claim that there was a hostile or harassing work environment.

jurisdiction to adjudicate LAD claims filed in federal court, notwithstanding the language of N.J. Stat. Ann. § 10:5-13, which provides in relevant part, "Any complainant may initiate suit in Superior Court under this act . . . ." The Court does not find this provision to limit its federally-authorized jurisdiction to hear state claims under 28 U.S.C. § 1367 or § 1332. See Butler v. Sherman, Silverstein & Kohl, P.C., 755 F. Supp. 1259, 1266 n.9 (D.N.J. 1990) (finding diversity jurisdiction under the LAD).

Plaintiff is a resident of Pennsylvania. Defendant is a New Jersey corporation with its principal place of business here. Plaintiff was employed as a Collections Specialist in Defendant's Bellmawr, New Jersey office and the decisions to hire and fire her were made in New Jersey.

Although on a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), in this case many of the facts are undisputed. Plaintiff's history of disciplinary and performance problems at ARM is undisputed. (See Def.'s St. of Undisp. Mat. Facts ("DUMF") at 2-3; Pl.'s Resp. in Opp. to DUMF at 1.) Plaintiff began working for ARM on December 23, 2002, as a bill collector. (Stokes Dep. at 11). Five days later, she received a warning from her first supervisor, Kim Haines, regarding her excessive tardiness. (Adair Decl. at ¶ 4.) Approximately one month later, on February 25,

3

2003, Plaintiff received another warning from her second supervisor, Woodrow Webb, regarding her failure to meet productivity standards. (Id. at ¶ 5; Stokes Dep. at 108.) On February 27, Webb sent Plaintiff home for failure to maintain productivity. (Adair Decl. at ¶ 6). On March 4, Plaintiff received another written warning from Webb regarding her tardiness. (Id. at ¶ 7; Ex. 8 to DUMF; Stokes Dep. at 107-08.) On May 31, two senior supervisors informed Plaintiff that she would be terminated if she did not increase her level of collections. (Adair Decl. at ¶ 8). There was no improvement in Plaintiff's performance that week. (Id. at ¶ 9.) From June 6, 2003, to August 11, 2003, Plaintiff took a leave of absence to deal with personal issues she said were affecting her work performance. (Id. at ¶ 10).

On October 23, the negative evaluations continued when Plaintiff received another warning for failure to maintain productivity standards and follow instructions. (Stokes Dep. 113-14). Plaintiff received another warning on November 3, 2003. (Id. at 116; Ex. 10 to DUMF.)

On December 22, 2003, Plaintiff received a "Fair" performance evaluation from her supervisor, Claude Bernard, with an "Unsatisfactory" rating in eight evaluated categories. (Adair Decl. at ¶ 11.) On February 5, 2004, Plaintiff received a warning regarding her failure to complete her shifts on January

4

30 and February 3, 2004.  (Id. at ¶ 12.)  On March 22, 2004, Plaintiff was admonished for soliciting payment, in violation of the Fair Debt Collection Practices Act, from a debtor who had filed for Chapter 7 bankruptcy protection.  (E. Dugan Dep. at 29).  Later that day, Plaintiff hung up the phone on a debtor (id.) and was sent home early (Stokes Dep. at 57).

That evening, Plaintiff had a scheduled doctor's appointment in Gloucester City, which she was talking about at work.  Edward Dugan, one of Plaintiff's supervisors (E. Dugan Dep. at 9-10)[2], overheard a co-worker giving Plaintiff directions and interjected (id. at 26; J. Dugan Dep. at 11-12).  Edward Dugan lived in Gloucester City, New Jersey (E. Dugan Dep. at 23, 26), and John Dugan used to live there, (J. Dugan Dep. at 10).  Edward Dugan told Plaintiff that "they do not like black people in Gloucester City," and warned her that she "better watch herself."  (Stokes Dep. at 45.)  John Dugan told Plaintiff to "wear a white sheet and hood" so she would "fit right in with that city."  (E. Dugan Dep. at 37.)  The brothers laughed at this comment.  (J. Dugan Dep. at 13; Stokes Dep. at 45.)  Plaintiff was offended at their racism and asked Edward Dugan whether he would help her if, for example, she passed out; he answered "no."

---

[2] In January 2004 Edward Dugan and John Dugan, two brothers who are Caucasian, began working for Defendant as a Collections Supervisor and Assistant Manager, respectively. (E. Dugan Dep. at 4-5, 8-11, 16-17; J. Dugan Dep. at 4-5, 8.)

(E. Dugan Dep. at 37-38.)

The following day, March 23, 2004, Plaintiff was issued a "Final Warning," at a meeting with Edward Dugan and his supervisor, Bill Scott, which informed her that she failed to follow proper procedures on March 22 by soliciting funds from a Chapter 7 debtor. (Ex. 12 to Def.'s Summ. J. Br.; E. Dugan Dep. at 47-48.) Also that day, Plaintiff complained to Mr. Scott about the racially offensive conversation she had with the Dugan brothers the day before, (E. Dugan Dep. at 21), and followed up to make sure her claim was being investigated, (Stokes Dep. at 23-24, 55-56). Approximately two weeks after Plaintiff made her complaint, the Vice President of the company spoke with Edward and John Dugan about their comments, informed them that Plaintiff had complained, and notified them that the matter was being investigated. (J. Dugan Dep. at 20).

The following facts are disputed; therefore, they are set forth in the light most favorable to Plaintiff, the non-moving party. See Liberty Lobby, 477 U.S. at 255. Less than two months after the Dugans learned of Plaintiff's complaint, on June 17, 2004, Edward Dugan terminated Plaintiff for allegedly leaving work without permission and for raising her voice when confronted about it. (Stokes Dep. at 72-75.) On that day, according to Plaintiff, Edward Dugan had, in fact, given Plaintiff permission to take a break to get coffee at Dunkin' Donuts. (Id.; Compare

6

E. Dugan Dep. at 54.)  Plaintiff went to Dunkin' Donuts and was gone for fifteen minutes; when she returned, Edward Dugan confronted her, claimed that she had no permission to leave, and fired her.  (Stokes Dep. at 72-75.)  Plaintiff got upset and refused to get up from her desk, until Bill Scott insisted that she pack her things and leave.  (Id. at 75.)

Plaintiff contends that Defendant, through Edward Dugan, fired her for complaining of discrimination.  She argues that Defendant's claims -- that she was fired for leaving work without permission and raising her voice to Mr. Scott -- are merely pretexts.

It is undisputed, however, that after Plaintiff was fired, ARM hired another African American woman to replace her and that after that woman moved out of the area and left ARM, the company again hired an African American woman for the position.  (E. Dugan Dep. at 65-66.)

**II.  DISCUSSION**

**A.   Summary Judgment Standard**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable

7

favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999) (quoting Liberty Lobby, 477 U.S. at 255). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted). In other words, the Court may not weigh the credibility or probative value of competing proffered evidence in a summary judgment motion as to any material fact.

**B.   Plaintiff's Discriminatory Discharge Claim**

Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's claim that she was fired because of her race, in violation of 42 U.S.C. § 1981 and the LAD. Defendant claims Plaintiff cannot meet her burden of establishing a *prima facie* case of discrimination, which requires her to show: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was fired; and (4) employees not in that protected class were treated more favorably. See, e.g., Turner v. Schering-Plough Corp., 901 F.2d 335, 342 (3d Cir. 1990). Specifically, Defendant argues that Plaintiff was not qualified

to be a Collections Specialist and that other employees were not treated more favorably than she was. (Def.'s Summ. J. Br. at 12-13.) In addition, Defendant notes that Plaintiff was replaced by an African American employee. (Def.'s Summ. J. Reply. Br. at 7.)

Further, Defendant argues, even assuming that Plaintiff could establish a *prima facie* case for discriminatory discharge, Defendant can meet its production burden to then articulate a legitimate reason for firing her. At that point, according to Defendant, Plaintiff will be unable to meet her ultimate burden of proving that ARM's stated reasons were pretexts. (Def.'s Summ. J. Br. at 13-14.)

Plaintiff argues that she has presented sufficient indirect evidence of discrimination to sustain this cause of action. (Pl.'s Br. Opp. Summ. J. at 7.) Plaintiff notes that Defendant admits its agents made racially charged statements that disturbed Plaintiff and that she made a good faith complaint of discrimination to Mr. Scott. (Id.) Further, Plaintiff argues, the Court should take as true Ms. Stokes' testimony that she had permission to leave Defendant's premises on the day she was fired. (Id.) Therefore, she claims, Plaintiff has alleged facts sufficient to show that Defendant's proffered reasons for her termination are pretexts. (Id.)

A case like this one with only circumstantial evidence of employment discrimination is often referred to as a "pretext"

9

case.  See Fakete v. Aetna, Inc., 308 F.3d 335, 338 n.2 (3d Cir. 2002); Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506 (3d Cir. 2004).  As in cases with direct evidence of discrimination, the plaintiff in a pretext case has the burden at trial of proving that the defendant acted with intent to discriminate.  See Goodman v. Lukens Steel Co., 777 F.2d 113, 135 (3d Cir. 1985) (action under § 1981 requires racial animus and discriminatory intent).  However, the absence of direct statements by the defendant is not fatal; rather, the case proceeds under the burden-shifting framework established in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973), for claims asserted under both 42 U.S.C. § 1981, Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 385 (3d Cir. 1999), and the LAD in accordance with New Jersey law, Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 81 (1978).

The Third Circuit has articulated two sets of criteria for establishing a *prima facie* pretext case of discriminatory discharge; one version requires the plaintiff to show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she was discharged, and (4) the position was ultimately filled by a person not of the protected class, Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996) (en banc).  The second version of the test for a *prima facie* case requires the plaintiff to show that (1) she is a member of a protected class, (2) she was qualified for the

10

position, (3) she was fired, and (4) employees not in that protected class were treated more favorably.  <u>Turner</u>, 901 F.2d at 342.

Plaintiff cannot survive the motion for summary judgment on her claim of discriminatory discharge under either version of the test.  She has no *prima facie* claim under the first test because it is undisputed that ARM replaced her with another African American female employee.  Plaintiff has no *prima facie* claim under the second test because she has presented no evidence that similarly situated non-African American employees were treated more favorably than she was.

> Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth "specific facts showing that there is a genuine issue for trial," else summary judgment, "if appropriate," will be entered.

<u>United States v. Premises Known as 717 S. Woodward St., Allentown, Pa.</u>, 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).  Plaintiff has provided no examples of the work experiences of her fellow employees, other than to note that white co-workers took cigarette breaks on the day she was fired, but were not fired.  Moreover, she has proffered no examples of white employees with similarly dismal records of reprimands and a "Final Warning" who were nonetheless

retained in employment after she was fired. No reasonable jury could find Plaintiff's evidence sufficient to show that similarly situated white employees were treated more favorably than she was; it is undisputed that Plaintiff had received a "Final Warning" several months earlier, then left the premises for at least fifteen minutes during a particularly busy day and got into an argument with her supervisors when confronted about her absence upon her return. Plaintiff does not claim that any other ARM employee was in that situation. Because Plaintiff has failed to set forth any proof for one element of her *prima facie* case under either of the Third Circuit's formulations of it, summary judgment is appropriate with respect to Plaintiff's claims of discriminatory firing.

### C. Plaintiff's Retaliation Claim

Defendant also argues that it is entitled to judgment as a matter of law on Plaintiff's retaliation claim because she cannot demonstrate a causal link between her complaint about Edward and John Dugan and her termination by Bill Scott.[3] (Def.'s Summ. J. Br. at 19-20.) Defendant argues that Plaintiff only presented evidence that she was fired within three months of making her

---

[3] While Plaintiff contends that Edward Dugan fired her, Defendant claims that Bill Scott was the "decisionmaker," but that this disputed fact is immaterial. (Def.'s Reply Br. at 7.) The Court disagrees; because Edward Dugan was one of the employees reprimanded as a result of Plaintiff's complaint, the disagreement as to whether or not he was responsible for Plaintiff's termination is a genuine dispute of material fact.

12

complaint and that this temporal activity, without more, will not suffice.  (Id. at 20-21).

Plaintiff claims that she has provided sufficient evidence of a causal connection to permit her claims to go to a jury, including evidence of temporal proximity between Plaintiff's complaint and her firing, inconsistent reasons given for her termination, and ongoing antagonisms between Plaintiff and the Dugans. (Pl.'s Br. Opp. Summ. J. at 8-9) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271 (3d Cir. 2000); (Pl's Br. Opp. Summ. J. at 7.)

To establish a *prima facie* retaliation claim under 42 U.S.C. § 1981 or the LAD, Plaintiff must show: (1) that she engaged in a protected activity, (2) that she suffered an adverse employment action after or at the same time as the protected activity, and (3) that there was a causal connection between the protected activity and the adverse employment action.  Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001); Slagle v. County of Clarion, 435 F.3d 262, 265 (3d Cir. 2006); Lawrence v. Nat'l Westminster Bank New Jersey, 98 F.3d 61, 71 (3d Cir. 1996).  Both parties agree that Plaintiff has met the first and second requirements in this case; the question is whether there is a causal connection between Plaintiff's complaint about the Gloucester City conversation and her termination.

For a causal connection to exist between Plaintiff's

complaint of racism and her termination, Plaintiff's complaint must have had a "determinative effect" on ARM's employment action. Woodson v. Scott Paper Co., 109 F.3d 913, 932 (3d Cir.), cert. denied, 522 U.S. 914 (1997). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989)(quoting Burrus v. United Tele. Co., 683 F.2d 339, 343 (10th Cir.), cert. denied, 459 U.S. 1071 (1982)).

In this case, Plaintiff has alleged that Edward Dugan and his brother made a racist comment to her; that she complained to Edward Dugan's supervisor about it; that less than two months later Edward Dugan fired her; and that he fabricated the allegation that she left work without authorization to cover up his discriminatory and retaliatory motives. Although Plaintiff concedes she got upset when she was accused of leaving work without permission, this "insubordination" would not insulate her termination from this Court's review if, as a reasonable jury could find, Edward Dugan intentionally provoked this reaction to create an apparent justification for firing Plaintiff in retaliation for her complaint against him. In this situation, the Court cannot say as a matter of law that summary judgment is appropriate on the retaliation claims under 42 U.S.C. § 1981 or

14

the LAD.  Therefore, the Court will deny the motion for summary judgment as to Plaintiff's claim that Defendant retaliated against her for lodging her race discrimination complaint against the Dugan brothers by firing her.  The Court expresses no opinion on the likelihood, if any, of Plaintiff prevailing at trial upon her retaliation claims.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the motion for summary judgment in part, and dismiss Plaintiff's claims for discriminatory termination, but deny the motion for summary judgment as to Plaintiff's retaliation claims.  The accompanying Order will be entered.


**November 2, 2006**             **s/ Jerome B. Simandle**
Date                             JEROME B. SIMANDLE
                                 U.S. District Judge

15